**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SCOTT M. FAVATA and KRISTINA S. MULLEN,

                           Plaintiffs,                    5:23-cv-01549 (BKS/TWD)

v.

JD MOTORS OF CNY, LTD., d/b/a JD Motors, and
CREDIT ACCEPTANCE CORPORATION,

                           Defendants.

---

**Appearances:**

*For Plaintiffs:*
Russell W. Dombrow
Dombrow Law Firm
499 South Warren Street, Suite 405
Syracuse, NY 13202

*For Defendant Credit Acceptance Corporation:*
Chester R. Ostrowski
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Scott M. Favata and Kristina S. Mullen brought this action against Defendants

JD Motors of CNY, Ltd. and Credit Acceptance Corporation, alleging violations of the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Magnuson-Moss Warranty Act, 15 U.S.C. §

2301, *et seq.*, New York Personal Property Law § 302, and the New York General Business Law

§ 349, breach of the implied warranty of merchantability and the implied warranty of

serviceability, and the "Holder Rule" promulgated by the Federal Trade Commission, as well as

1

claims of negligence, breach of contract, and unjust enrichment. (Dkt. No. 4). Plaintiffs also seek declaratory relief. (*Id.* ¶¶ 167-172). Defendant JD Motors has not answered the Amended Complaint or otherwise appeared in this action. Presently before the Court is Plaintiffs' motion to vacate, under Rule 60(b) of the Federal Rules of Civil Procedure, the dismissal of Defendant Credit Acceptance Corporation ("CAC"). (Dkt. Nos. 36, 24). The motion is fully briefed. (Dkt. Nos. 36-4, 37, 40). Also pending before the Court is Plaintiffs' motion for default judgment against Defendant JD Motors. (Dkt. No. 31). For the reasons that follow, Plaintiffs' motion to vacate is denied, and Plaintiffs' motion for default judgment is denied.

## II.    BACKGROUND

### A.    Facts[1]

JD Motors is a Retail Motor Vehicle Dealer licensed by the New York State Department of Motor Vehicles located in Fulton, NY. (Dkt. No. 4, ¶ 16). On December 9, 2022, Plaintiffs were driving through the City of Fulton when they saw JD Motors' "lot with a sign on it that said the dealership financed 'everyone.'" (*Id.* ¶ 22). Mr. Favata "had experienced credit challenges[,]" so Plaintiffs decided to stop at JD Motors' lot. (*Id.* ¶ 23). JD Motors showed Plaintiffs a 2011 Ford F-150 available for sale. (*Id.* ¶¶ 21, 24). JD Motors' salesperson "represented . . . that JD Motors was selling the F-150 below 'book value,' and that the F-150 was a 'good truck,' and that the F-150's frame and structure were 'solid.'" (*Id.* ¶ 26).

JD Motors did not disclose that "the truck had so much rubberized undercoating on it to conceal the frame and underbody's true condition, which was thoroughly rusted." (*Id.* ¶ 27). JD

---

[1] The facts are taken from the Amended Complaint. (Dkt. No. 4). Because Defendant JD Motors has failed to respond to the Amended Complaint, or otherwise appear in this case, the well-pleaded allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Motors also did not disclose "that the cab corners had body filling and duct tape concealing the damage." (*Id.*). Mr. Favata test drove the F-150, but did not "observe the rust and holes in the truck's body[,]" because JD Motors "concealed those defects with, for example, rubberized undercoating, duct tape, body 'filler,' and possibly other materials." (*Id.* ¶ 25).

Many of the allegations in the Amended Complaint are made "upon information and belief," including all of the allegations regarding the documentation of the sale of the truck. (*Id.* ¶¶ 29-47). It alleges, "upon information and belief," the following. Plaintiffs each electronically signed a credit application "as a secondary source of income." (*Id.* ¶¶ 29, 32). JD Motors never explained to Plaintiffs "what [they were] signing nor provided [them] with a copy of the completed document to review" before asking them to e-sign. (*Id.* ¶¶ 30, 33). JD Motors also "did not allow" Mr. Favata or Ms. Mullen "to see the computer monitor the document appeared on[,]" or to "control the equipment used to enter" their "personal identifiable information (PII) into the document." (*Id.* ¶¶ 31, 34). Plaintiffs also e-signed Credit Report Authorization Forms at JD Motors' request. (*Id.* ¶ 35).

The Amended Complaint further alleges "upon information and belief" that JD Motors had Plaintiffs each "e-sign a Retail Instalment (*sic*) Contract (RIC), to memorialize the transaction's loan terms[,]" (*id.* ¶ 38), but "never obtained" Plaintiffs' "consent to e-sign the RIC," (*id.* ¶¶ 41, 45). JD Motors "did not provide a copy of the RIC, without any blank spaces" to the Plaintiffs, "so they could review the RIC **before** signing[.]" (*Id.* ¶ 39). The RIC attached to the Amended Complaint lists Truth in Lending Disclosures in bold and has the Plaintiffs' electronic initials or signature on each page. (Dkt. No. 4-2). The RIC lists JD Motors as the "Creditor-Seller." (*Id.* at 2). The RIC states that "[t]he original retail installment contract is assigned to Credit Acceptance Corporation." (*Id.*). CAC is "an auto finance lender in the

subprime market[,]" which "purchased, acquired, and serviced" Plaintiffs' auto finance loan from JD Motors. (Dkt. No. 4, ¶¶ 18-19).

Plaintiffs allege that CAC provided JD Motors "with the interest rate at which [CAC] would be willing to buy the RIC from" JD Motors. (*Id.* ¶ 48). The actual interest rate JD Motors "deceived [Plaintiffs] into agreeing with in the RIC is higher than the interest rate [CAC] set to purchase the RIC[.]" (*Id.* ¶ 50). JD Motors never disclosed that CAC was purchasing the RIC from JD Motors at a lower rate, or that JD Motors was making a profit on financing the vehicle purchase. (*Id.* ¶ 52). JD Motors "presented the interest rate it quoted to Mr. Favata and Ms. Mullen to create the impression that [CAC] mandated that interest rate[,]" and Plaintiffs' entire monthly payment would be going to CAC. (*Id.* ¶ 53). Plaintiffs "would have negotiated better interest rate terms, shopped for a better interest rate outside of the dealership, or simply backed out of the transaction" if JD Motors had made Plaintiffs aware that the interest rate being offered was "designed to maximize JD Motors [sic] rather than being the lowest interest rate JD Motors was willing to offer[.]" (*Id.* ¶ 55).

Also, the amended complaint alleges "upon information and belief" that JD Motors did not disclose to Plaintiffs that they were purchasing an extended warranty or service contract during the document signing process, or how much of the money paid for the extended warranty or service contract JD Motors would retain as a commission or profit. (*Id.* ¶¶ 59-60). Additionally, JD Motors "knew or had reason to know that the $250.00 fees" Plaintiffs paid for processing the "Certificate of Title, License and Registration" exceeded the estimated fees of $179.00, but never disclosed that fact to Plaintiffs nor refunded the overcharge. (*Id.* ¶¶ 61-66). These items were listed on the RIC. (*Id.* ¶¶ 56-58).

The RIC also contains a section titled "Arbitration Clause" which stated that, if Plaintiffs did not want the Clause to apply, they could reject it by taking certain actions. (*Id.* ¶¶ 68-69). The RIC contains Plaintiffs' initials inside a box with "Arbitration" in bold, which notes that there is an arbitration clause and Plaintiffs' initials on the page describing the arbitration clause. (Dkt. No. 4-2, at 1, 5). Plaintiffs allege that they would have rejected the Arbitration Clause or "simply backed out of the transaction" if JD Motors had made them aware of it. (Dkt. No. 4, ¶ 70).

Plaintiffs accepted delivery of the F-150 from JD Motors on December 9, 2022—the same day they purchased it. (*See id.* ¶ 71). JD Motors also assigned the RIC to CAC on December 9, 2022. (*Id.* ¶ 78). Both Plaintiffs are listed on the bill of sale, (*id.* ¶ 72), the RIC, (*id.* ¶ 76), and the registration, (*id.* ¶ 77). The bill of sale contains a "warranty disclosure," noting that state law implied warranties may give the buyer "some rights to have the dealer take care of serious problems that were not apparent when [the buyer] bought the vehicle." (*Id.* ¶ 73). The amended complaint alleges "upon information and belief" that before the sale, the F-150 had an "FTC Used Car" warranty "affixed to one of the vehicle's windows that was also part of the agreement between the parties[,]" (*id.* ¶ 74), but JD Motors never provided Plaintiffs a copy of that warranty, (*id.* ¶ 75).

"Within days after taking delivery of the F-150, Mr. Favata noticed several mechanical problems[,]" including that the F-150 had an exhaust leak and the brakes were seizing up, "impairing the F-150's ability to stop in traffic." (*Id.* ¶¶ 84-85).[2] Mr. Favata took the F-150 to have the brakes repaired at "Monro Muffler Brake," which "diagnosed the F-150 with a hole in the catalytic converter" and recommended replacing all the F-150's brakes. (*Id.* ¶ 87-88). On or

---

[2] Plaintiffs allege that they first notified JD Motors of the "various defects in the goods on or about December 9, 2022," (Dkt. No. 4, ¶ 113)—the same day Plaintiffs purchased and received the F-150.

about January 25, 2023, Mr. Favata took the F-150 to "Automotive Accessories," which "identified that the F-150 had underbody rot that had been covered with rubberized undercoating" and that the F-150 "required over $2,800.00 in repairs" to pass inspection. (*Id.* ¶¶ 89-93). These problems included replacement of the front brake calipers and replacement of the front and rear brake pads and rotors. (*Id.* ¶ 92). By April 12, 2023, "the heat no longer correctly worked in the F-150," and it had developed "a ticking noise that wouldn't go away[.]" (*Id.* ¶ 99). "On or before April 21, 2023, Mr. Favata purchased an inexpensive replacement vehicle [ ] because the F-150's mechanical and structural issues were so severe." (*Id.* ¶ 100).

### B.    Procedural History

Plaintiffs filed this action on December 9, 2023, (Dkt. No. 1), and then filed an Amended Complaint on December 18, 2023, (Dkt. No. 4). On April 8, 2024, CAC filed a motion to compel arbitration. (Dkt. No. 21). On May 7, 2024, Plaintiffs and CAC filed a "Stipulation to Withdraw Motion to Compel Arbitration and Stay Action Pending Arbitration," (Dkt. No. 23), which Magistrate Judge Thérèse Dancks signed, (Dkt. No. 24). The stipulation indicated that "[o]n or before **July 31, 2024**, Plaintiffs shall initiate binding arbitration [ ] of all claims that have been or could be asserted in this action by Plaintiffs against [CAC]." (*Id.* at 1). The stipulation further provided, "This action shall be stayed pending arbitration, provided, however, that, if Plaintiffs fail to initiate arbitration on or before **July 31, 2024**, as set forth herein, any and all claims asserted by Plaintiffs in this action shall be dismissed with prejudice[.]" (*Id.* at 2). "For the avoidance of doubt, no further Order of this Court shall be necessary to effectuate the dismissal of Plaintiffs' claims[,] which shall result automatically in the event that Plaintiffs fail to initiate arbitration[.]" (*Id.*). The parties were ordered to file a joint status report regarding arbitration proceedings no later than September 27, 2024. (Dkt. No. 25).

On September 27, 2024, the parties filed separate status reports with the Court. (Dkt. Nos. 32, 33). Defense counsel for CAC reported that "[a]lmost two full months have elapsed since the expiration of Plaintiffs' deadline to initiate arbitration, and Plaintiffs have not initiated arbitration. Nor did Plaintiffs timely seek or obtain any extension. As such, the claims asserted against [CAC] have been automatically dismissed with prejudice pursuant to the Stipulation and Order." (Dkt. No. 32, at 2). Plaintiffs' counsel conceded in his report that Plaintiffs "did not file their claim" by the July 31, 2024 deadline, and that he did not seek an extension from CAC. (Dkt. No. 33, at 1). However, Plaintiffs' counsel argued that "excusable neglect caused the arbitration not to be filed." (*Id.*). Plaintiffs' counsel indicated that, in the past twelve months, he unexpectedly became the primary caregiver to his eighty-year-old mother. (*Id.* at 2). On October 1, 2024, Judge Dancks ordered Plaintiffs to file a Rule 60 motion for relief from judgment. (Dkt. No. 35). Plaintiff filed a motion to vacate on October 11, 2024. (Dkt. No. 36).

Defendant JD Motors did not answer or otherwise appear, (Dkt. No 13), and the Clerk entered a certificate of default as to JD Motors on March 18, 2024, (Dkt. No. 18). Plaintiffs filed a motion for default judgment as to JD Motors on May 31, 2024, (Dkt. No. 30), which Defendant CAC opposed, (Dkt. No. 31).

## III.    DISCUSSION

### A.    Motion to Vacate

Plaintiffs appear to argue that the Court should vacate the dismissal with prejudice under either Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect[,]" or 60(b)(6), "any other reason that justifies relief." (Dkt. No. 36-4, at 7 (quoting Fed. R. Civ. P. 60(b); *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993))). Defendant CAC disagrees, asserting that Plaintiffs' counsel "plainly has not established 'excusable neglect' under Rule

60(b)(1) nor 'any other reason justifying relief' within the meaning of Rule 60(b)(6)." (Dkt. No. 37, at 5-6).

"[A]n agreement between the parties to dismiss a claim with prejudice constitutes a 'final judgment on the merits.'" *Winnie v. Durant*, No. 20-cv-502, 2021 WL 1999782, at *3, 2021 U.S. Dist. LEXIS 94874, at *8 (N.D.N.Y. May 19, 2021) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986). As such, "a stipulation to dismiss 'with prejudice' retains its preclusive effect until it is vacated pursuant to a motion under Federal Rule of Civil Procedure 60(b) or otherwise." *Amid v. Chase*, 720 F. App'x 6, 9 (2d Cir. 2017) (citations omitted); *see also Andresakis v. S. Cent. Conn. Reg'l Water Auth.*, 122 F.3d 1055 (2d Cir. 1997) ("A dismissal with prejudice arising out of an agreement of the parties is an adjudication of all matters contemplated in the agreement and . . . bars further proceedings." (quoting *Nemaizer*, 793 F.2d at 61)).

Rule 60(b) is "a mechanism for 'extraordinary judicial relief' invoked only if the moving party demonstrates 'exceptional circumstances.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994)). Rule 60(b)(1) allows for relief from judgment based on "mistake, inadvertence, surprise, or excusable neglect[.]" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009). "Rule 60(b)(6), on the other hand, allows for relief from judgment based on 'any other reason justifying relief.'" *Callahan v. City of New Haven Bd. of Educ.*, No. 17-cv-617, 2020 WL 4586487, at *1, 2020 U.S. Dist. LEXIS 142509, at *2 (D. Conn. Aug. 10, 2020) (quoting *Brien*, 588 F.3d at 175).

"[W]hen evaluating Rule 60(b)(1) motions premised on excusable neglect[,]" courts consider "(i) the danger of prejudice to the nonmovant; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith."

*Doe v. Bd. of Educ. of N. Colonie Cent. Sch. Dist.*, No. 22-cv-700, 2023 WL 4199250, at *2, 2023 U.S. Dist. LEXIS 110170, at *3-4 (N.D.N.Y. June 27, 2023) (citing *Pioneer*, 507 U.S. at 395), *aff'd*, No. 23-1035-cv, 2024 WL 3024515, 2024 U.S. App. LEXIS 14629 (2d Cir. June 17, 2024). "[T]he Second Circuit has focused on the third [*Pioneer*] factor: the reason for the delay, including whether it was within the reasonable control of the movant." *Id.* (quoting *In re 199 E. 7th St. LL*, No. 17-cv-545, 2017 WL 2226592, at *2, 2017 U.S. Dist. LEXIS 77019, at *4 (S.D.N.Y. May 19, 2017) (noting that "three of the *Pioneer* factors—the length of the delay, the danger of prejudice, and the movant's good faith—usually weigh in favor of the party seeking the [relief]")). "[A]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Hartford Steam Boiler Inspection & Ins. Co. v. Se. Refractories, Inc.*, 212 F.R.D. 62, 64 (D. Conn. 2003) (quoting *Pioneer,* 507 U.S. at 392). The determination as to what constitutes excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer*, 507 U.S. at 395).

"An attorney's negligence does not provide ground for relief under Rule 60(b)(1)." *Doe*, 2023 WL 4199250, at *3, 2023 U.S. Dist. LEXIS 110170, at *4 (quoting *Daane v. Ryder Truck Rental, Inc.*, No. 18-cv-10489, 2023 WL 2330256, at *2, 2023 U.S. Dist. LEXIS 35326, at *6 (S.D.N.Y. Mar. 2, 2023)). "[T]he attorney of record bears sole responsibility to prosecute his client's claim, keep track of deadlines and respond to motions filed on the docket." *Snyman v. W.A. Baum Co.*, No. 04-cv-2709, 2009 WL 306505, at *1, 2009 U.S. Dist. LEXIS 9353, at *4 (S.D.N.Y. Feb. 6, 2009) (quoting *Hill v. World Class Auto. Corp.*, No. 06-cv-2496, 2008 WL 4809445, *3, 2008 U.S. Dist. LEXIS 114988, at *8 (E.D.N.Y. Nov. 4, 2008)). Further, "the

Second Circuit has 'consistently refused to relieve a client of . . . a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload.'" *Doe*, 2023 WL 4199250, at *2, 2023 U.S. Dist. LEXIS 110170, at *5 (quoting *Carcello v. TJX Cos., Inc.*, 192 F.R.D. 61, 63 (D. Conn. 2000)).

Here, the "principal" *Pioneer* factor, Plaintiffs' reason for delay, is not sufficient to relieve Plaintiffs from a final judgment entered against them. *See id.*, 2023 WL 4199250, at *2, 2023 U.S. Dist. LEXIS 110170, at *5. Plaintiffs' counsel indicates that "[i]n the past twelve (12) months," he became "a primary caregiver" to his now eighty-year-old mother. (Dkt. No. 36-1, ¶ 23). He explains that his mother's eyesight has deteriorated, and that she cannot drive and struggles to read. (*Id.* ¶ 24). Plaintiffs' counsel also states that he has had to "adjust [his] schedule to attend court appearances and work on client matters to accommodate [his] mother's need for transportation assistance." (*Id.* ¶ 26). Finally, Plaintiff's counsel admits that he "failed to balance [his] obligations to the Court and to [his] clients by missing the stipulated extension deadline[.]" (*Id.* ¶ 40).

While the Court sympathizes with Plaintiffs' counsel, it was nonetheless his "sole responsibility to prosecute" his clients' claims and "keep track of deadlines[.]" *See Snyman*, 2009 WL 306505, at *1, 2009 U.S. Dist. LEXIS 9353, at *4. *See also Carcello*, 192 F.R.D. at 64 (denying 60(b)(1) motion where counsel "contend[ed] he suffered from 'serious medical problems' at the time [the opposing party] filed its motion[,]" but "failed to communicate with either opposing counsel or the court to apprise them of the serious nature of his medical condition he now claims to be the reason for his misfeasance"). Counsel himself was not ill; his

caregiving responsibilities do not appear to have been a sudden imposition; and he continued to "attend court appearances and work on client matters." (*See* Dkt. No. 36-1, ¶¶ 23-26).

The other *Pioneer* factors, relevant "only in close cases[,]" do not tip the scales. *See In re Glob. Aviation Holdings Inc.*, 495 B.R. 60, 65 (Bankr. E.D.N.Y. 2013) (quoting *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-416 (2d Cir. 2004)). First, Plaintiffs have failed to demonstrate a lack of prejudice to Defendant CAC. "[B]ecause 'delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult,' the Second Circuit has held that 'prejudice to defendants resulting from unreasonable delay may be presumed.'" *William v. City of New York*, No. 16-cv-5208, 2018 WL 11219952, at *2 (S.D.N.Y. July 23, 2018) (quoting *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999)), *aff'd*, 771 F. App'x 94 (2d Cir. 2019). Further, Defendant CAC has already been prejudiced by Plaintiffs' counsel's failure to timely commence arbitration: rather than enjoying the bargained-for finality promised by the parties' stipulation, Defense counsel has had to research and respond to a motion to vacate. *See Doe*, 2023 WL 4199250, at *3, 2023 U.S. Dist. LEXIS 110170, *7 (noting prejudice to non-movant where, "due to [plaintiffs'] counsel's inattention, defense counsel was required to research and respond to a motion to vacate dismissal after the case had already been dismissed with prejudice").

Plaintiffs' delay of more than two months in commencing arbitration is not insignificant—particularly in light of the clear language of the stipulation requiring Plaintiffs to take action lest their claims be *automatically* dismissed with prejudice. (*See* Dkt. No. 24, at 2 ("For the avoidance of doubt, no further Order of this Court shall be necessary to effectuate the dismissal of Plaintiffs' claims [ ] in this action under Paragraph 5 above, *which shall result automatically* in the event that Plaintiffs fail to initiate arbitration[.]") (emphasis added)).

Finally, good faith alone will not save Plaintiffs' motion if they cannot establish excusable neglect. *See Renaissance Search Partners v. Renaissance Ltd. LLC*, No. 12-cv-5638, 2014 WL 4953578, at *3, 2014 U.S. Dist. LEXIS 141024, at *9 (S.D.N.Y. Oct. 1, 2014) (holding that although defense counsel's "good faith [had] not been questioned," the defendants could not establish excusable neglect). *See also Ojomo v. KRA Corp.*, No. 03-cv-0907, 2005 WL 1176569, at *3, 2005 U.S. Dist. LEXIS 44790, at *7 (N.D.N.Y. May 11, 2005) ("[T]here is no indication of prejudice to Defendant in this case. Similarly, the length of the delay was very short. There also is no reason to believe that Plaintiff (or his counsel) have acted in the absence of good faith. Thus, these factors weigh in favor of Plaintiff. However, the Court finds that these three factors are strongly outweighed by the third factor - the reason for the delay, including whether it was within the reasonable control of the movant[.]").

Plaintiffs' case law in support of their argument that their counsel's neglect was excusable is inapposite. (*See* Dkt. No. 36-4, at 10). In *Pall Corp. v. Entegris, Inc.*, the court set aside a default under Rule 55(c) where the defaulting party failed to respond to the defendant's counterclaims. 249 F.R.D. 48, 54-55 (E.D.N.Y. 2007). But the court in *Pall* noted that the standard under 55(c) "is 'less rigorous' than the excusable neglect standard . . . under Rule 60(b)." *Id.* at 55. (quoting *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). Further, the case against the defendant in *Pall* had not been dismissed, and litigation was ongoing. *Id.* at 56 (finding no prejudice if the entry of default was set aside, because defendant was informed of defaulting party's defenses prior to the onset of discovery). Here, because "an agreement between the parties to dismiss a claim with prejudice constitutes a 'final judgment on the merits[,]'" *see Winnie*, 2021 WL 1999782, at *3, 2021 U.S. Dist. LEXIS 94874, at *8, Plaintiffs must meet the more "rigorous" excusable neglect standard under 60(b), *see Pall Corp.*, 249

F.R.D. at 55-56. Further, the litigation will not continue with respect to CAC unless the court vacates the stipulated dismissal. *See id.*[3] Plaintiffs' request for relief pursuant to Rule 60(b)(1) must be denied.

While Plaintiffs' counsel underscores that "[t]he inadvertent, careless, or mistaken failure to file the arbitration by the stipulated deadline is [his] and [his] alone[,]" (Dkt. No. 36-1, ¶ 22), clients are "not generally excused from the consequences of [their] attorney's negligence absent extraordinary circumstances." *Doe*, 2023 WL 4199250, at *2, 2023 U.S. Dist. LEXIS 110170, at *2 (quoting *Carcello*, 192 F.R.D. at 63). These are not such extraordinary circumstances. For all the aforementioned reasons, Plaintiffs have not met their burden under *Pioneer* to demonstrate excusable neglect.

Plaintiffs' argument for relief under Rule 60(b)(6) also fails. "Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)). As Defendant CAC notes, Plaintiffs' "statements about the supposed 'extraordinary circumstances' warranting Rule 60(b)(6) relief are copied and pasted directly from his argument about 'reasonable control'

---

[3] Plaintiffs also cite *Freedom Mortg. Corp. v. Astudillo*, to support the proposition that "the movant promptly filing the motion to vacate within one (1) month after filing the arbitration claim or otherwise at the Court's request can lead to a finding of sound reasons for the delay[.]" (Dkt. No. 36-4, at 10 (citing No. 19-cv-3591, 2024 WL 4350336, at *3, 2024 U.S. Dist. LEXIS 151961, at *7 (E.D.N.Y. Aug. 23, 2024), *report and recommendation adopted*, No. 19-cv-3591, 2024 WL 4350861, 2024 U.S. Dist. LEXIS 177929 (E.D.N.Y. Sept. 30, 2024)). In *Freedom*, the non-defaulting plaintiff sought to vacate a judgment of foreclosure because of a loan modification agreement between the parties that settled the case. *Id.* 2024 WL 4350336, at *3, 2024 U.S. Dist. LEXIS 151961, at *6-7. The court in *Freedom* set aside the default, because the delay in entering into the loan-modification agreement was reasonable in light of the Fannie Mae COVID-19 moratorium and the defendant's bankruptcy filing. *Id.* Further, there was no prejudice to the defaulting defendants, because (1) the default judgment would have benefited the plaintiff, and (2) the defaulting defendants did not oppose the motion. *Id.* 2024 WL 4350336, at *3-4, 2024 U.S. Dist. LEXIS 151961, at *7-8. These facts do not align with the case at bar, and (as Defendant CAC points out) the "timeliness of a motion to vacate under Rule 60(c) and the length of the delay are properly considered separately from whether the *reasons for delay* are legally adequate." (*See* Dkt. No. 37, at 22 n.7). *See also Doe*, 2023 WL 4199250, at *2, 2023 U.S. Dist. LEXIS 110170, at *3-4 (considering "length of delay" as distinct from "reason for delay").

in the 60(b)(1) context, only replacing 'reason for delay' with 'extraordinary circumstances.'" (Dkt. No. 37, at 24-25 (citing Dkt. No. 36-4, at 13-14, 17-18)). Plaintiffs' counsel's extraordinary circumstances are the same circumstances that comprise his argument for relief under 60(b)(1)—namely, excusable neglect. Because excusable neglect falls under 60(b)(1), Plaintiffs are not entitled to relief under 60(b)(6). *See Mandala*, 88 F.4th at 359. Therefore, the Court will not vacate the stipulated dismissal. All claims against Defendant CAC are dismissed, with prejudice.

### B.     Motion for Default Judgment

Plaintiffs move for default judgment against Defendant JD Motors in the amount of $24,380.37, with interest, costs and taxable disbursements. (*See* Dkt. No. 30).

### 1.     Procedural Requirements

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded."). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestley*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of

entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Here, Plaintiffs requested and obtained a clerk's entry of default under Rule 55(a), (see Dkt. Nos. 16, 18), and, as required by Local Rule 55.1, Plaintiff submitted an affidavit affirming that JD Motors (1) is not an infant, in the military, or an incompetent person; (2) was properly served; and (3) has defaulted in this action. (Dkt. No. 30-7). Plaintiff properly served JD Motors in accordance with Federal Rule of Civil Procedure 4(h)(1)(B) by serving the Complaint on an authorized agent for Defendant JD Motors. (Dkt. No. 15). Plaintiffs did not attach a proposed form of default judgment to their motion. Because the Court is denying the motion for default judgment, this deficiency does not affect this decision; Plaintiffs must, however, include a proposed form of default judgment in any motion to renew. [4]

### 2. Liability

By failing to appear in this action or respond to the Amended Complaint, Defendant JD Motors is deemed to have admitted the factual allegations in the Amended Complaint with respect to liability (as distinct from damages). *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability"). "The decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted). Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default,

---

[4] Defendant CAC argues that Plaintiffs' motion should be denied because "Plaintiffs failed to submit a memorandum of law in support of their Motion or to make any other effort to explain the basis for a determination of liability against the Dealership on any of these causes of action, apparently assuming that the default judgment would be granted 'as a matter of right.'" (Dkt. No. 37, at 7). While the Northern District's local rules do not require submission of a memorandum of law in order to obtain a default judgment, *see* Local Rule 55.2; *United States v. Cool*, No. 12-cv-0107, 2012 WL 2469972, at *2, 2012 U.S. Dist. LEXIS 89029, at *3 (N.D.N.Y. June 27, 2012), Plaintiffs must submit a memorandum of law in any renewed motion.

a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (citation omitted).

Here, the Complaint does not specify which cause of action is attributable to which Defendant. (*See, e.g.,* Dkt. No. 4, ¶ 104 (noting "Defendant" is liable for violations of the TILA and Regulation Z)). Plaintiffs' lack of specificity is complicated by Defendant CAC's subsequent dismissal from the case and the fact that Plaintiffs have not identified the claims for which they seek default judgment against Defendant JD Motors. *See Grazette v. Rockefeller*, No. 20-cv-965, 2022 WL 252631, at *2, 2022 U.S. Dist. LEXIS 16077, at *4 (S.D.N.Y. Jan. 26, 2022) (denying the plaintiffs' motions for default judgment in part because they did not "identify the claims for which he [sought] default judgment against each [d]efendant, let alone satisfy his burden as the party moving for default judgment of demonstrating that the allegations in the amended complaint state[d] a claim upon which relief may be granted). To make matters worse, the Complaint is riddled with erroneous references to non-parties. (*See, e.g.,* Dkt. No. 4, ¶¶ 146-49 (describing Plaintiffs' Count 7 for breach of contract against "Defendant TCS"), 163 (alleging that "The Car Shoppe subsequently assigned the RIC to the Defendant [CAC].")). Plaintiffs' repeated errors undermine their claims and make their causes of action difficult to parse. (*See, e.g.,* ¶¶ 107, 112, 114, 115, 117, 121, 130, 136, 145, 147-49, 156, 160-163 (referencing "TCS" or "The Car Shoppe" instead of JD Motors or CAC and the buyers' names as "Ms. Landry" and "Mr. Barnhart")).

Plaintiffs allege ten causes of action in total.[5] The claims for unjust enrichment (Count 8), "FTC Holder Rule Liability" (Count 9), and "New York State Motor Vehicle Retail Installment Act Assignee Liability" (Count 11), appear to be alleged solely against Defendant CAC. (Dkt. No. 4, at ¶¶ 150-66). The Court will first consider whether Plaintiffs have established any valid claims against JD Motors under federal law.[6]

### a.    Truth in Lending Act (Count 1)

Plaintiffs allege that "the disclosure statement issued in conjunction" with Plaintiffs' consumer credit transaction "violated the requirements of Truth in Lending and Regulation Z[.]" (Dkt. No. 4, ¶ 103). Specifically, they allege that these requirements were violated by failing to "provide the required disclosures **prior** to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 1026.17(b), and by "failing to make required disclosures, including the number of payments (sixty-six (66) $769.12[7] payments), annual percentage rate and finance charge, clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 1026.17(a)." (*Id.*).

"The Truth in Lending Act, 15 U.S.C. § 1640, provides for a private right of action for damages where a creditor fails to make disclosures required by the Act, 15 U.S.C. § 1638." *Rodriguez v. Auto Sales, Inc.*, 477 F. Supp. 2d 477, 479 (D. Conn. 2007). "Among other things, the Truth in Lending Act 'requires that creditors in consumer credit transactions disclose the identity of the creditor, the amount financed, a statement of the consumer's right to obtain a

---

[5] Plaintiffs erroneously count eleven causes of action, skipping over number ten. (*See* Dkt. No. 4, at 39-40). The Court uses the Plaintiffs' designations for clarity's sake.

[6] Plaintiffs alleged federal question jurisdiction under 28 U.S.C. § 1331. (Dkt. No. 4, ¶ 7). Since Plaintiffs are New York State residents and JD Motors is in Fulton, New York, (*Id.*, ¶¶ 14-16), there is no diversity jurisdiction. 28 U.S.C. § 1332.

[7] Plaintiffs appear to have listed an erroneous monthly payment in their TILA claim. (*See* Dkt. No. 4, ¶ 103(b)). The RIC provides for 66 payments of $365.13, (Dkt. No. 4-2, at 2), which is the amount of the monthly payment Mr. Favata claims to have made since January 2023 in his affidavit, (Dkt. No. 30-1, ¶ 6).

written itemization of the amount financed, the finance charge, the APR, the total payments and the number, amount, and due dates or period of payments scheduled to repay the total payments.'" *Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 103 (D. Conn. 2020) (quoting *James v. Lopez Motors, LLC*, No. 16-cv-835, 2018 WL 1582552, at *3, 2018 U.S. Dist. LEXIS 55147, at *7 (D. Conn. Mar. 31, 2018)).[8] "Regulation Z's requirement that the terms 'finance charge' and 'annual percentage rate' be more conspicuous than other terms corresponds with a TILA provision codified at 15 U.S.C. § 1632(a)." *Kelen v. World Fin. Network Nat. Bank*, 763 F. Supp. 2d 391, 393 (S.D.N.Y. 2011). "Regulation Z requires creditors to 'make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep.'" *Conley v. 1008 Bank St., LLC*, No. 20-cv-284, 2020 WL 4926599, at *7, 2020 U.S. Dist. LEXIS 152507, at *18 (D. Conn. Aug. 22, 2020) (quoting 12 C.F.R. § 1026.17(a)(1)). "With respect to the timing of the disclosures, the regulations require creditors to 'make disclosures before consummation of the transaction.'" *Id.* (quoting 12 C.F.R. § 1026.17(b)).

Plaintiffs do not specifically allege that JD Motors is a "creditor" under the TILA, but the RIC attached to the Amended Complaint lists JD Motors as the "Creditor-Seller" and includes a section titled "Truth in Lending Disclosures[.]" (*See* Dkt. No. 4, at 2). The Court will therefore consider JD Motors as a creditor within the TILA for the purposes of this motion. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 529 n.18 (E.D.N.Y. 2006) ("As

---

[8] "'Creditor' is defined by the Act as 'a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.'" *Rodriguez*, 477 F. Supp. 2d at 479 (quoting 15 U.S.C. § 1602(f)).

Paragon has not disputed its creditor status and as all the evidence suggests Paragon is indeed a creditor, Paragon is treated as a creditor for purposes of this motion.").

As a preliminary matter, the Court notes that all of Plaintiffs' allegations regarding the signing of the RIC at JD Motors are based "upon information and belief." (Dkt. No. 4, ¶¶ 29-47). Plaintiffs have alleged that, "upon information and belief," they were not provided with copies of, or permitted to view, the RIC prior to e-signing and "JD Motors never obtained [their] consent to e-sign the RIC. (*Id.*). "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018). "Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Id.* at 384-85 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

The Court notes that the Plaintiffs' electronic initials or signatures appear at the bottom of each page of the RIC, including the page with the Truth in Lending Disclosures in bold print. (Dkt. No. 4-2, at 2-6). The facts regarding the signing of the RIC are within Plaintiffs' personal knowledge, yet there are no facts providing an explanation of how they e-signed their initials without viewing the computer monitor or "control[ling] the equipment used[.]" (*See* Dkt. No. 4, ¶¶ 31, 34, 37, 40). Also, Plaintiffs' allegations that JD Motors "never obtained" their "consent to e-sign the RIC," (Dkt. No. 4, ¶¶ 41, 45), would appear to be fatal to their TILA claim; no TILA claim could be established in the absence of a valid contractual relationship between the parties, and a forged signature would render the RIC void under New York law. *See Islam v. Lee's Motors, Inc.*, No. 17-cv-03955, 2018 WL 4771884, at *3, 2018 U.S. Dist. LEXIS 170998, at *9-

10 (E.D.N.Y. Sept. 30, 2018) (dismissing TILA claim where the plaintiffs alleged that auto dealer "obtained" one plaintiff's signature when he "signed a blank electronic signature pad[,]" then "digitally applied the signatures to the RIC without authorization," explaining that the facts suggested signatures were forged, "rendering the RIC void under New York law"). Accordingly, Plaintiffs have not alleged facts sufficient to support a finding of liability on the TILA claim under 15 U.S.C. § 1638(b) for failing to provide the required disclosures prior to consummation of the transaction.[9]

### b.    Plaintiffs' Remaining Claims

Because Plaintiffs have failed to establish liability under TILA, the Court must consider whether Plaintiffs have any other viable federal claims. Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. 2201(a), but this Act "does not by itself confer subject matter jurisdiction[;] . . . there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006). Count 4 of the Amended Complaint alleges a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, "but federal court jurisdiction [under the MMWA] is restricted to those suits that can satisfy two relevant elements[:] (1) the amount in controversy of any individual claim must be at least $25; and (2) the overall amount in controversy must be at least $50,000, excluding interest and costs." *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 169 (E.D.N.Y. 2016) (quoting *Wood v.*

---

[9] The Court notes that Plaintiffs' allegation that JD Motors violated § 1632(a) also fails. (*See* Dkt. No. 4, ¶ 103(b)). The RIC provided to the Court by Plaintiffs includes the number of payments, annual percentage rate, and finance charge in bold type in a conspicuous box in the middle of the first page. (*See* Dkt. No. 4-2, at 2). The RIC provides for 66 payments of $365.13, which is the amount of the monthly payment Mr. Favata claims to have made since January 2023. (*See* Dkt. No. 30-1, ¶ 6). And, even assuming that Plaintiffs could point to a violation of 15 U.S.C. § 1632(a), such a violation "is not one that Congress has chosen to remedy through an award of statutory damages." *See Kelen*, 763 F. Supp. 2d at 393.

*Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013)). *See also Jiminez v. Going Forward, Inc.*, 25 F. Supp. 2d 54, 55 (D. Conn. 1998) (noting Magnuson-Moss states "that a plaintiff may bring a claim in federal court only if the amount in controversy exceeds $50,000, 'computed on the basis of the claims in this suit'" (citing 15 U.S.C. § 2310(d)(3)(B))). It does not appear that Plaintiffs' claims rise to the required jurisdictional amount, as the motion for default judgment seeks only $23,780.37 in damages exclusive of interests and costs. (*See* Dkt. No. 30-10).[10]

Moreover, to establish a claim under the MMWA, Plaintiffs "must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) (citations omitted). The Court notes that Defendant CAC has opposed the motion for default judgment, asserting that the amended complaint fails to adequately allege breach of warranty claims. (*See* Dkt. No. 31, at 8-9); *see also Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012) ("With respect to motor vehicles, it has been held that the 'ordinary purpose' to which the implied warranty speaks is 'to enable the purchaser to transport [them]self upon the streets and highways . . . in a reasonably safe manner.'" (quoting *Enobakhare v. Carpoint, LLC*, No. 08-cv-4798, 2011 WL 703920 *9, 2010 U.S. Dist. LEXIS 141481, at *27 (E.D.N.Y. Jan. 10, 2011), *report and recommendation adopted,* No. 08-cv-4798, 2011 WL 704902, 2011 U.S. Dist. LEXIS 16383 (E.D.N.Y. Feb. 16, 2011)). To the extent Plaintiffs seek to renew their motion for default judgment, they must file a memorandum of law addressing whether there is federal jurisdiction

---

[10] The Amended Complaint alleges in one paragraph that Plaintiffs "have suffered damages of at least $50,761.92, which represents the difference between the value of the goods as delivered and the value they would have had if the goods had been delivered as warranted." (Dkt. No. 4, ¶ 114). However, there are no factual allegations supporting that assertion; according to the RIC, the total sale price of the truck was $31,598.58. (Dkt. No. 4-2, at 2). Given the number of errors in the amended complaint, the $50,761.92 figure appears to be another error.

under the MMWA and respond to CAC's briefing regarding the sufficiency of the warranty claims.

"Pursuant to 28 U.S.C. § 1367, a district court has supplemental jurisdiction over certain state law claims when they are brought in the same case or controversy as one with federal law issues." *United Rentals, Inc. v. Wilper*, 626 F. Supp. 3d 546, 552 (D. Conn. 2022). "However, a district court is entitled to decline supplemental jurisdiction when [. . .] the state law claim substantially predominates over claims in which the district court has jurisdiction, when the district court has dismissed all claims within its jurisdiction, or for other compelling reasons." *Id.* "In circumstances where a federal court has dismissed all federal claims in which original jurisdiction existed, the court 'must reassess its jurisdiction over the case by considering several factors—judicial economy, convenience, fairness, and comity.'" *Id.* at 553. At this point, the Court will not address the state court claims until Plaintiffs have established a basis for federal jurisdiction. Plaintiffs' motion for default judgment is therefore denied. To the extent Plaintiffs seek leave to file an amended complaint, any motion to file an amended complaint must comply with NDNY Local Rule 15.1. To the extent Plaintiffs seek to file a renewed motion for default judgment, any renewed motion must include a memorandum of law, identifying the claims Plaintiffs seek to pursue against JD Motors, and must address the deficiencies identified above. Plaintiffs must also provide supplemental evidence of damages, as the present documentary evidence is deficient.[11] *See Hernandez*, 505 F. Supp. 3d at 102 (noting that a district court ruling

---

[11] Plaintiffs must provide caselaw support for their request for the full amount paid for the vehicle, the retail installment payments, and their insurance payments. Moreover, Plaintiffs do not offer any evidence (nor do they even allege) that they actually *paid* for any repairs on the F-150. *See Hernandez*, 505 F. Supp. 3d at 102 ("A court may not just accept a plaintiff's statement of the damages, even in a default judgment." (quoting *Chance v. Karmacharya*, No. 14-cv-01111, 2017 WL 5515951, at *1, 2017 U.S. Dist. LEXIS 216092, at *5 (D. Conn. Mar. 20, 2017))). Further, Plaintiffs have not provided the Court with any evidence documenting how much time their counsel spent on their case; Plaintiff Favata affirms only that he paid their counsel a $1,250.00 retainer. (*See* Dkt. No. 30-1, ¶ 14); *see also Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) ("All applications

on default judgment must "determine the amount of damages to be awarded; to do so, it may

conduct a hearing or it may make such a finding on the basis of documentary evidence if

damages are ascertainable with reasonable certainty" (quoting *Chance*, 2017 WL 5515951, at *1,

2017 U.S. Dist. LEXIS 216092, at *3)).

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion to vacate (Dkt. No. 36) is **DENIED**, and all claims

against Defendant Credit Acceptance Corporation are **DISMISSED** in accordance with the

Stipulation and Order (Dkt. No. 24), and it is further

**ORDERED** that Plaintiff's motion for default judgment (Dkt. No. 30) is **DENIED**

without prejudice to renewal, and it is further

**ORDERED** that to the extent Plaintiffs seek to file a second amended complaint, any

motion to file an amended complaint must comply with NDNY Local Rule 15.1, and must be

filed within thirty days of this Order; and it is further

**ORDERED** that to the extent Plaintiffs seek to file a renewed motion for default

judgment it must be filed within 30 days of the date of this Decision. Any renewed motion for

default judgment must include a memorandum of law: (1) briefing the Court on the basis for

subject matter jurisdiction; (2) identifying all claims against which judgment is sought as to

Defendant JD Motors, and specifically addressing the deficiencies identified above, on any such

claims; and (3) briefing and documentary evidence, in admissible form, from individuals with

personal knowledge, supporting Plaintiffs' request for damages; and it is further

---

for attorney's fees . . . [must be] accompanied by contemporaneous time records indicating, for each attorney, the
date, the hours expended, and the nature of the work done") (quotation marks omitted).

**ORDERED** that if Plaintiffs do not file a motion to amend the complaint or a renewed motion for default judgment, they must file and serve a status report within 30 days of the date of this Decision stating how they intend to proceed, and it is further

**ORDERED** that Plaintiffs serve a copy of this Memorandum-Decision and Order on Defendant JD Motors and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: June 11, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge